UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

ANTHONY WHITE

                    Defendant.

<u>REPORT & RECOMMENDATION</u>

05-CR-6096T

---

<u>**PRELIMINARY STATEMENT**</u>

          By Order of Hon. Michael A. Telesca, United States District Judge, dated April

27, 2006, all pretrial matters in the above-captioned case have been referred to this Court

pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 28).

          Defendant Anthony White is charged in a single-count indictment.  Specifically,

the indictment charges White with unlawfully possessing a firearm and ammunition after having

been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation

of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Docket # 9).  Currently before this Court for a report

and recommendation are White's motions to suppress statements and physical evidence seized

from his residence at 494 Seward Street.  (Docket # 20).[1]

---

          [1] White's omnibus motions also sought, *inter alia*, discovery and inspection, *Brady* material, *Jencks*
material, disclosure of evidence pursuant to Rule 404 of the Federal Rules of Evidence and the preservation of rough
notes.  (Docket # 20).  Each of these requests was either resolved by the parties or decided in open court by the
undersigned on February 13, 2006.  (Docket ## 23, 25).  White's omnibus motions also included a motion to
suppress statements, which was withdrawn during oral argument based upon representations by the government that
the only statements made related to his biographical information.  Thereafter, at the evidentiary hearing for White's
motion to suppress physical evidence, the government advised that White had indeed made additional (non-pedigree)
statements at the time of his arrest.  (Suppression Hearing Transcript at 3-4).  As a result, the Court permitted White

## FACTUAL BACKGROUND

On February 21, 2006, this Court conducted an evidentiary hearing on White's motions to suppress.  At the hearing, the government offered the testimony of Rochester Police Officer Francis Archetko and Special Agent Jane Baldassare of the Bureau of Alcohol, Tobacco and Firearms.  The following constitutes this Court's findings of fact.

On June 10, 2005, at approximately 4:36 p.m., Officer Archetko responded to a 911 call for "family trouble" at 494 Seward Street.  (Tr. 6).[2]  Upon arriving at that address, Archetko observed a woman, later identified as Kathryn Mobley, standing in the driveway.  (Tr. 7).  Archetko got out of his patrol car and approached Mobley, who stated that she had been in a fight with her boyfriend and that he had hit her.  In response, Archetko asked Mobley whether she wanted her boyfriend arrested.  (Tr. 7).  Mobley replied, "No, but I want you to talk to him and ask him if he would leave."  (Tr. 8).  Archetko then asked whether the boyfriend lived with Mobley at that location, to which she replied that he did.  Archetko explained that he would ask the boyfriend to leave, but that he could not force him to do so because he resided at the location. Mobley repeated her request, asking Archetko go inside and speak with her boyfriend.  Mobley further explained that her boyfriend was in the first floor bedroom, which was "right by the front of the house."  (Tr. 8).

At that point, Archetko entered the house, turned to the right and approached the closed door to the bedroom.  (Tr. 9).  Standing to the side of the door frame, Archetko knocked

_____

to renew his motion to suppress statements.  (Suppression Hearing Transcript at 20).

[2] The transcript of the suppression hearing conducted before this Court on February 21, 2006, shall hereinafter be referenced as "Tr. __."  (Docket # 27).

on the door and heard a male voice say "come in." (Tr. 10). Archetko pushed the door open and observed White sitting on the bed loading a shotgun. (Tr. 10-11). The shotgun had a shortened barrel and a pistol grip. White was pointing the shotgun in the direction of the doorway as he loaded it with ammunition. (Tr. 10-12). Archetko then drew his service weapon and ordered White to drop the gun, which he did. Archetko directed White to stand up and turn around. White complied, and Archetko restrained him with handcuffs. As he did so, Archetko observed additional shotgun slugs on the bed where White had been sitting. (Tr. 12-13). Archetko then brought White into the living room and called for backup. (Tr. 13).

   Five days later, on June 15, 2005, Special Agents Jane Baldassare and John Hayes of the Bureau of Alcohol, Tobacco and Firearms went to the Monroe County Jail to take White into federal custody pursuant to a federal arrest warrant and to transport him to the federal courthouse for an initial appearance on a criminal complaint that had been filed that day charging him with a violation of 18 U.S.C. § 922(g)(1).[3] (Tr. 21-22; Docket # 1). Baldassare introduced herself and Hayes to White and explained that his case was going to be handled federally and that they would be transporting him to the federal building to meet with his attorney and for arraignment. As he was being transported, White made several statements to the agents concerning the events leading up to his arrest. First, while leaving the Monroe County Jail, White stated to the agents that he was trying to unload the firearm. (Tr. 23, 28-29). Thereafter, in the car on the way to the federal building, White repeatedly stated that he was afraid of his girlfriend, which was the reason he was trying to unload the firearm, and that the gun was not his, but belonged to his girlfriend's father. (Tr. 23-24, 28-29). The statements were not made in

_____

[3] At the time, White was being detained on state charges arising from the June 10, 2005 events.

3

response to any questions by the agents, nor did the agents ask White any questions following his statements.  (Tr. 25-26).  Rather, they reminded White that they were federal agents, that he would be meeting with his attorney shortly and that he should wait to speak with his attorney before saying anything further.  (Tr. 26, 30).

## REPORT AND RECOMMENDATION

White moves to suppress the shotgun and ammunition seized from 494 Seward Street at the time of his arrest on June 10, 2005.  In addition, White moves to suppress the statements made by him while being transported to the federal courthouse on June 15, 2005.  The government opposes both of White's motions.  (Docket # 20).

## I.  Motion to Suppress Physical Evidence

White contends that Officer Archetko's entry into his residence constituted an unreasonable warrantless search requiring suppression of the shotgun and ammunition seized from the bedroom.[4]  (Docket # 20).  The Fourth Amendment generally prohibits law enforcement officers from conducting a warrantless search of a defendant's residence.  *See* U.S. Const. amend. IV; *see also Georgia v. Randolph*, __ U.S. __, 126 S. Ct. 1515, 1520 (March 22, 2006) (Fourth Amendment "ordinarily prohibit[s] the warrantless entry of a person's house as unreasonable per se") (citing *Payton v. New York*, 445 U.S. 573, 586 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)).  An exception to the general rule permits searches

---

[4]  White has provided the Court with an affidavit affirming that he resided at 494 Seward Street and had an expectation of privacy in the premises.  Based upon this affidavit, I find that White has standing to challenge the search.

4

based upon the voluntary consent of a person authorized to provide consent.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995), *cert. denied*, 516 U.S. 1050 (1996).  Such consent may be given either by the owner of the property that is to be searched or by a third party possessing common authority over said property.  *See Georgia v. Randolph*, 126 S. Ct. at 1520 (citing *Schneckloth v. Bustamonte*, 412 U.S. at 222; *United States v. Matlock*, 415 U.S. 164, 171 (1974)).  The consent need only be voluntary, that is, obtained without coercion, and the resident need not be advised of his or her right not to consent.  *See Schneckloth*, 412 U.S. at 231-33; *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995).  "Consent must be a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority."  *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993) (citations omitted), *cert. denied*, 511 U.S. 1130 (1994).

        The government bears the burden of proving by a preponderance of the evidence that any consent to enter or search a residence was voluntary.  *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 830 (1981).  The issue of voluntariness is to be determined based upon the totality of the circumstances, *Schneckloth*, 412 U.S. at 227; *United States v. Hernandez*, 5 F.3d 628, 632 (2d Cir. 1993); *United States v. Kon Yu-Leung*, 910 F.2d 33, 41 (2d Cir. 1990), and the standard to be applied is an objective one, *United States v. Garcia*, 56 F.3d at 423.

        In this matter, the credible testimony establishes that on June 10, 2005, Officer Archetko responded to 494 Seward Street concerning a 911 call for "family trouble."  (Tr. 6).  When he arrived, White's girlfriend, Kathryn Mobley, met him in the driveway and reported that she and White argued and that he had hit her.  (Tr. 7).  When Archetko asked her whether she

wanted White arrested, Mobley stated, "No, but I want you to talk to him and ask if he would leave." (Tr. 8). Archetko inquired whether White lived at the residence with Mobley, and she replied that he did. Archetko explained that although he could ask White to leave, he could not force him to do so because he resided at the location. Mobley repeated her request that Archetko go inside and talk with White, who, she advised, was in a bedroom on the first floor to the right of the front door. (Tr. 8).

When Archetko entered the residence, he knocked on the door to the bedroom and heard a male voice say "come in." (Tr. 10). Archetko opened the door and observed White sitting on the bed pointing a shotgun with a shortened barrel toward the doorway as he was loading the gun with ammunition. (Tr. 10-12). After ordering White to drop the firearm and restraining him, Archetko observed additional ammunition on the bed where White had been sitting. (Tr. 12-13).

On this record, I find that the evidence obtained from White's bedroom was properly seized. Archetko's initial entry into the house was based upon Mobley's voluntary consent. *See Georgia v. Randolph*, 126 S. Ct. at 1527 ("if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out"); *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990) (officers' warrantless entry into defendant's residence, where defendant was sleeping in a bedroom, may be justified by their reasonable belief that individual who provided consent to enter had common authority over the premises). Archetko merely asked Mobley whether she wanted White arrested based upon her report that he had hit her. It was Mobley who requested that Archetko talk with

6

White and then directed him to the bedroom in which White was located.  Before entering the bedroom, Archetko knocked on the closed door, heard White say "come in," and thus lawfully entered the bedroom.  *See United States v. Hatfield*, 365 F.3d 332, 340 (4th Cir.) (defendant consented to warrantless entry of his residence by stating, upon hearing a knock on the door, "the door is open; come on in"; officers were not required to announce their presence and the warrantless entry was thus reasonable under Fourth Amendment), *cert. denied*, 543 U.S. 909 (2004).

Under the plain view doctrine, an agent is permitted to seize items of evidentiary value if he has a legitimate right to be in the location, the item's incriminating nature is obvious and the officer can lawfully access the object.  *See Horton v. California*, 496 U.S. 128, 136-37 (1990); *Illinois v. Andreas*, 463 U.S. 765, 771 (1983).  I find that the plain view doctrine applies here to justify seizure of the shotgun and ammunition, which were visible when Archetko entered the room – an entry that was lawful, as discussed above.  Their incriminating nature was obvious from the shotgun's altered barrel, and Archetko had the right at that point to seize the gun and ammunition.

Accordingly, I recommend denial of White's motion to suppress the physical evidence seized from 494 Seward Street.


## II.  Motion to Suppress Statements

White also moves to suppress statements made by him to Special Agents Baldassare and Hayes while being transported to the federal courthouse for arraignment.  White

contends that these statements should be suppressed because he was not first advised of his *Miranda* rights.  (Tr. 20).

It is, of course, well-settled that statements made during custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right.  *Id.* at 444.

In this matter, the government concedes that White was in custody at the time of his statements.  (Tr. 32).  It maintains, however, that he was not subjected to interrogation and thus administration of the *Miranda* warnings was not required.  "'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  Interrogation includes direct questioning, as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v. Innis*, 446 U.S. at 301, and that would "produce psychological pressures that [would] subject the individual to the 'will' of his examiner."  *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (citations omitted).  *See also United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *United States v. Thomas*, 961 F. Supp. 43, 44-45 (W.D.N.Y. 1997).

Generally excepted from the *Miranda* requirements are statements spontaneously made by a defendant.  The Supreme Court has recognized that statements made by a defendant

8

that are not elicited in response to interrogation do not violate the Fifth Amendment.  *See Innis*, 446 U.S. at 299-300.  As the Court has reasoned:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.  The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . .  Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Miranda*, 384 U.S. at 478; *see also Innis*, 446 U.S. at 299-300; *United States v. Vasta*, 649 F. Supp. 974, 987 (S.D.N.Y. 1986).

Here, five days after White was arrested by Archetko, Special Agents Baldassare and Hayes arrested him pursuant to a federal arrest warrant and transported him from the Monroe County Jail to the federal building for an initial appearance on the complaint.  (Tr. 21-22).  When they first met White, the agents introduced themselves and explained that his case was going to be handled federally and that they would be transporting him to the federal building, where he would meet with an attorney.  While waiting to leave the jail, White stated, without prompting, that he was trying to unload the firearm.  In the car on the way to the courthouse, White made two additional statements that he repeated several times: that he was afraid of his girlfriend, which was why he was unloading the weapon, and that the gun was not his, but belonged to his girlfriend's father.  (Tr. 23-24, 28-29).

White's statements were not made in response to any inquiry by the agents or statements designed to elicit an incriminating response, nor did the agents engage in any follow-up questioning.  Instead, they reminded White that they were federal agents, that he would

be meeting soon with his attorney and that he should speak with his attorney before saying anything further.  (Tr. 26, 30).  On this record, I find that White's statements were entirely spontaneous and were not obtained in violation of his Fifth Amendment rights.  *See Miranda*, 384 U.S. at 478; *Innis*, 446 U.S. at 299-300.  I therefore recommend that White's motion to suppress the statements made by him on June 15, 2005 be denied.


## <u>CONCLUSION</u>

For the foregoing reasons, it is my recommendation that White's motions to suppress statements and physical evidence **(Docket # 20)** be **DENIED**.


 *s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
May   8  , 2006.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **<u>Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.</u>**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

      *s/Marian W. Payson*
        MARIAN W. PAYSON
      United States Magistrate Judge

Dated: Rochester, New York
      May   8  , 2006.

---

[5]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).